original

FORM FOR USE IN APPLICATIONS

FOR HABEAS CORPUS UNDER 28 U.S.C. † 2254

2:06-CV-805-MEF

Tommy J. Boldin
Name

AIS# 142961
Prison Number

Draper Correctional Facility , P.O. Box 1107 , Elmore , Alabama 36025

Place of Confinement

United States District Court Middle District of Alabama

Case No. CC-86-79
(To be supplied by Clerk of U. S. District Court)

Tommy J. Boldin
(Full Name) (Include name under which you were convicted), PETITIONER

Warden James Deloach
(Name of Warden, Superintendent, Jailor, or authorized person having custody of Petitioner), RESPONDENT

and

THE ATTORNEY GENERAL OF THE STATE OF Hon. Troy King

, ADDITIONAL RESPONDENT.

(if petitioner is attacking a judgement which imposed a sentence to be served in the future, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. §2255, in the federal court which entered the judgment.)

## PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

### INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly handwritten or typewritten and signed by the petitioner under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

The Judicial Conference of the United States has adopted, effective 1/1/83, the 8½ x 11 inch paper size standard for use throughout the federal judiciary and directed the elimination of the use of legal size paper. All pleadings, etc. filed after 12/31/82 must be on 8½ x 11 inch paper, otherwise we cannot accept them.

(2) Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary filing fee, you may request permission to proceed in forma pauperis, in which event you must execute the declaration on the last page, setting forth information establishing your inability to prepay the fees and costs or give security therefor. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(7) When the petition if fully completed, the original and two copies * must be mailed to the Clerk of the United States District Court whose address is:

P.O. Box 711
Montgomery, Alabama 36101

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

***If you are proceeding in forma pauperis, only the original petition needs to be filed with the Court.**

PETITION

1. Name and location of court which entered the judgment of conviction under attack Circuit Court of Montgomery County

2. Date of judgment of conviction September 10 , 1986

3. Length of sentence 30 Years Sentencing Judge Hon. Mark G. Montiel , J.

4. Nature of offense or offenses for which you were convicted: (Attempt Murder)

5. What was your plea? (check one)
(a) Not guilty (xx)
(b) Guilty ( )
(c) Nolo contendere ( )
If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: N/A

6. Kind of trial: (Check one)
(a) Jury (xx)
(b) Judge only ( )

7. Did you testify at the trial? Yes ( ) No (xx)

8. Did you appeal from the judgment of conviction? Yes (xx) No ( )

9. If you did appeal, answer the following:
(a) Name of court Alabama Court of Criminal Appeals
(b) Result Conviction was affirmed
(c) Date of result Lost legal papers transfering from prison to prison over the years.
If you filed a second appeal or filed a petition for certeorari in the Supreme Court, give details: Petition was denied.

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal? Yes (XX) No ( )

11. If your answer to 10 was "yes", give the following information:
(a) (1) Name of court Circuit Court of Montgomery County
(2) Nature of proceeding Rule 32 Petition
(3) Grounds raised Do not know or remeber due to loss of case records
(4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ( ) No (XX)
(5) Result Affirmed
(6) Date of result Do not know or remember due to loss of case records

(b) As to any second petition, application or motion give the same information:

(1) Name of court Circuit Court of Montgomery County

(2) Nature of proceeding Rule 32 Petition

(3) Grounds raised Do not know or remember due to loss of case records

(4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ( ) No (xx)

(5) Result Affirmed

(6) Date of result Do not know or remember due to loss of case records

(c) As to any third petition, application or motion, give the same information:

(1) Name of Court Circuit Court of Montgomery County

(2) Nature of proceeding Rule 32 Petition

(3) Grounds raised Do not know or remember due to loss of case records

(4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ( ) No (xx)

(5) Result Affirmed

(6) Date of result Do not know or remember due to loss of case records

(d) Did you appeal to the highest state court having jurisdiction the result of any action taken on any petition, application or motion:

(1) First petition, etc. Yes (xx) No ( )

(2) Second petition, etc. Yes (xx) No ( )

(3) Third petition, etc. Yes (xx) No ( )

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not: N/A

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. As to all grounds on which you have previously exhausted state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: The Petitioner herein was found guilty based upon unconstitutionally insufficient evidence , and without proof "beyond a reasonable doubt."

Supporting FACTS (tell your story briefly without citing cases or law): On September 10 , 1986 , the Petitioner was convicted in a jury trial that lasted for approximately one (1) day in the Circuit Court of Montgomery County. The jury deliberated for approximately twenty (20) minutes before reaching its verdict of guilty. Thereafter , the trial court sentenced the Petitioner to thirty (30) years imprisonment. The Petitioner hereby state that his conviction was based upon total hearsay testimony given by the alleged victim police officer (Lt. Armstead) of the Montgomery Police Department in retaliation of the Petitioner killing his nephew in self defense in a previous manslaughter case. (Lt. Armstead) falsily accused and charged the Petitioner of attempting to shoot him in the "TOP FLIGHT NIGHT CLUB" located in Montgomery , Alabama. The alleged state witness (Investigator A.C. ricks) of the Montgomery Police Department falsily testified that on direct examination that he heard the alleged gun involved to have misfire "click" when the Petitioner pulled the trigger. Then on cross examination by the Petitioner defense counsel , state witness (Investigator A.C. Ricks) testified that he did not hear the "click" of the pistol misfire. Then on redirect by the

(CONTINUE ON ATTACHMENT SHEET #1)

B. Ground two:

Supporting FACTS (tell your story briefly without citing cases or law):

C. Ground three:

Supporting FACTS (tell your story briefly without citing cases or law):

D. Ground four: (N/A)

Supporting FACTS (tell your story briefly without citing cases or law): (N/A)

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal state briefly what grounds were not so presented, and give your reasons for not presenting them: (N/A)

14. Do you have any petition or appeal now pending in any court, wither state or federal, as to the judgment under attack? Yes ( ) No (xx)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing Hcnorable J. Eldridge Holt

(b) At arraignment and plea Honorable J. Eldridge Hclt

(c) At trial Honorable J. Eldridge Holt

(d) At sentencing Honorable J. Eldridge Holt

(e) On appeal Honorable J. Eldridge Holt

(f) In any post-conviction proceeding (N/A)

(g) On appeal from any adverse ruling in a post-conviction proceeding: (N/A)

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ( ) No (xx)

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ( ) No (xx)

(a) If so, give name and location of court which imposed sentence to be served in the future: (N/A)

(b) And give date and length of sentence to be served in the future: (N/A)

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ( ) No ( ) (N/A)

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on 9-5-06.
(date)

Tammy J. Baldwin #142961
Signature of Petitioner

EWR

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
MONTGOMERY COUNTY, ALABAMA

2:06-CV-805-MEF

STATE OF ALABAMA,
Plaintiff,

v.

TOMMY BOLDIN,
Defendant.

Case No.: CC-85-0024.60 EWR

**STATE'S ANSWER TO PETITION FOR RELIEF FROM CONVICTION AND SENTENCE AND MOTION TO DISMISS**

**COMES NOW** the State of Alabama, by and through its District Attorney for the Fifteenth Judicial Circuit, Eleanor I. Brooks, and moves this Honorable Court to dismiss the Petition For Relief From Conviction or Sentence pursuant to Rule 32, Alabama Rules of Criminal Procedure, and as grounds states the following:

On November, 13, 1985, a jury found the defendant guilty of manslaughter in the death of a police officer. On January 23, 1986, the defendant was sentenced to ten years in the department of corrections.

The defendant filed a Petition For Relief From Conviction Or Sentence on or about November 7, 2005

**FAILURE TO STATE GROUNDS FOR RELIEF**

As a basis for this Petition, Mr. Boldin does not allege grounds that are included in Rule 32.2 of the Ala.R.Crim.P. as a sufficient basis to support of his petition. Although the defendant claims he is seeking relief based on a constitutional claim, there is no other proof or offer of evidence is made to substantiate any allegation that this petition should be granted. There is no

indication of what grounds for which the petition is filed and the defendant only alleges that he was innocent without any supporting evidence. His claims should have been made on direct appeal instead of by a Rule 32 motion.

The petitioner provides no evidentiary facts to support his claims. The petitioner's bare allegations are without merit on their face and summary dismissal is proper under *Boles v. State*, 717 So.2d 877 (Ala. Crim. App. 1998). The petitioner has failed to meet the burden of proof as prescribed by Rule 32.3 A.R.Crim.P., which states the petitioner shall have the burden of pleading and providing by preponderance of the evidence the facts necessary to entitle the petitioner to relief.

**CONCLUSION**

For the above stated reasons, Petitioner is not entitled to relief on any of his claims, and his conviction and sentence are due to be upheld. There is sufficient evidence to support Petitioner's conviction and sentence. Thus, this petition is due to be denied. Therefore, the Respondent, the State of Alabama, moves this Honorable Court to dismiss, with prejudice, this Petition For Relief From Conviction and Sentence.

Respectfully submitted on this the 6th day of December 2005.

ELEANOR I. BROOKS
DISTRICT ATTORNEY

By: [signature]
JOHN L. KACHELMAN III (KAC001)
Deputy District Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served upon the defendant, by placing same in the U.S. Mail, postage prepaid and properly addressed, this the 6th day of December 2005.

ELEANOR I. BROOKS
DISTRICT ATTORNEY

JOHN L. KACHELMAN III (KAC001)
Deputy District Attorney

ADDRESS OF COUNSEL:

Montgomery County District Attorney's Office
100 South Lawrence Street
Montgomery, Alabama 36104
(334) 832-2550

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
MONTGOMERY COUNTY, ALABAMA

| | | |
|---|---|---|
| **STATE OF ALABAMA,** **Plaintiff,** | ) | |
| v. | ) | **Case No.: CC-85-0024.60 EWR** |
| **TOMMY BOLDIN,** **Defendant.** | ) | |

**ORDER**

This Court, having reviewed the Petitioner's "Petition For Relief From Conviction Or Sentence" filed pursuant to Rule 32, A.R.CR.P., and the State's "Answer to Petition For Relief From Conviction and Sentence and Motion to Dismiss," hereby finds as follows:

The petitioner provides no evidentiary facts to support his claims. The petitioner's bare allegations are without merit on their face and summary dismissal is proper under *Boles v. State*, 717 So.2d 877 (Ala. Crim. App. 1998). The petitioner has failed to meet the burden of proof as prescribed by Rule 32.3 A.R.Crim.P., which states the petitioner shall have the burden of pleading and providing by preponderance of the evidence the facts necessary to entitle the petitioner to relief.

Upon consideration of the preceding facts thereof, and having taken judicial notice of the Court's own records, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Petition is hereby **SUMMARILY DISMISSED** without an evidentiary hearing pursuant to Rule 32.7(d) of the Alabama Rules of Criminal Procedure.

**DONE** this 10 day of ~~December 2005.~~ JAN 2006

Hon. Eugene W. Reese
Circuit Judge
Fifteenth Judicial Circuit

CC: Tommy Boldin,
AIS#142961
Draper Correctional Facility, P.O Box 1107
Elmore, AL 36025

John Kachelman, Deputy District Attorney



In The Circuit Court Of
Montgomery Co., Alabama

Tommy Boldin,
B/ #142961
Petitioner,

vs.

State of Ala.,
Respondents

Case No.
CC85-24.60 EWH

JAN 2006
FILED
Melissa Rittenour
Circuit Clerk

Notice Of appeal

Comes now the Petitioner Tommy Boldin, prose, by and through himself, in the above style cause, and enters his notice of appeal from the judgment rendered against him on the 10th day of January, 2006, denying him relief on his Rule 32 petition.

Done on this 16th day of January, 2006.

Respectfully filed,
s/ Tommy Boldin B/#142961
Tommy Boldin - B/#142961
Draper Cor Fac.
P.O. Box 1107
Elmore, AL 36025

cc:
Court of Criminal Appeals

(CONTINUATION OF (GROUND ONE).)

State , state witness (Investigator A.C. Ricks) stated that he did in fact heard the "click" of the pistol when the trigger was pulled by the Petitioner. See the Petitioner trial transcripts hereby attached to petition. R.27 ; R.28 ; R.29 ; R.38 ; and R.42. See Also attached the District Attorney of Montgomery County response to the Petitioner previous Rule 32 Petition exhausting his state remedies in this postconviction litigation , falsily stating that "the Petitioner shot and killed the alleged victim police officer (Lt. Armstead)"in illegally mixing up the Petitioner case numbers as means to mislead and divert the circuit court attention off of the Petitioner claim presented.

## PETITIONER LEGAL ARGUMENT IN SUPPORT OF HIS ACTUAL INNOCENCE CLAIM

The Petitioner hereby requests that this Honorable Court examine the record of his 1986 (ATTEMPT MURDER) trial and conviction in Case No.: CC86-79 in which are the case under attack by the Petitioner herein. The Petitioner requests that this Honorable Court review his case under the standards of Jackson v. Virginia , 443 U.S. 307 , 99 S. Ct. 2781 , 61 L. Ed. 2d 560 (1979) , to determine whether there was , as a matter of Constitutional Law , sufficient evidence to warrant the jury's verdict , finding the Petitioner guilty of (ATTEMPt MURDER). The Petitioner requests a review under the Jackson standards , because it gives the Federal Court the jurisdiction to review the evidence in the light most favorable to the prosecution , that any rational trier of fact , could have found the Petitioner guilty "beyond a reasonable doubt." However , in the interest of justice , the Petitioner request that the court apply the Jackson standard to his case, be cause the Petitioner is actually innocent of the crime. The Petitioner's conviction was based upon constitutionally insufficient evidence and the State failed to prove "beyond" a reasonable "doubt" every fact neccessary to constitute the crime to which the Petitioner was charged and convicted in the Circuit Court of Montgomery County, Alabama. The Petitioner contends that, just as a charge not made would be a sheer denial of due process, so is it a violation of due process to convict and punish a man, without evidence of his being guilty. Thompson v. City of Louisville, 362 U.S. 199, 206, 80 s. Ct. 624, 4 L. Ed 2d 654 (1960).

## CONCLUSION

WHEREFORE, the Petitioner, Tommy Boldin-B/142961, herein request that this Honorable Court examine the records of his 1986 States' attempted muber trail under standards of Jackson v.Virgina, 443 U.S. 307, 99 S. Ct. 281, 61 L. Ed. 2d 560 (1979), tp determine whether there was, as a matter of Constitutional lae, sufficient evidence to warrant the jury's verdict, finding the Petitioner guilty of attempted murder of a police officer.

[THE END]

Q Then what did you do?

A Well, I met with Lieutenant Armstead by the front door and I told him about the guy. He had no idea what was going on. This guy just ran out and flagged him down so we went in together.

Q Okay.

A We went back inside the club at the little entrance there and we heard a guy says "He's back by the bar." So we stood at the little entrance there. We didn't go all the way in there and so one guy said "There he is." And he turned around and he pointed the gun. I didn't hear the click but Lieutenant Armstead was closer to the guy then I was.

Q And when you say he, who are you referring to?

A This gentleman here, Mr. Boldin.

Q And is he in the courtroom today?

A That's correct.

Q Would you point to him?

A I can. This gentleman here.

Q Let the record reflect the witness has identified the Defendant. And did you announce that y'all were police officers?

A When we got in the little foyer there Lieutenant Armstead was dressed and I put my badge on my belt there because I was in civilian clothes. We never did go

FORM OR-325 REPORTERS PAPER & MFG CO 800-626-6313

beyond that point because we heard the guy was standing right in the little, where you go in the club, there's a foyer there and you got a clear view to the bar, to the back of the club. So when we got inside that club they shouted "There he is." and we stepped out and I think Lieutenant Armstead shouted "Stop." or "Halt." And the guy turned around but he was closer to the guy then I was.

Q The Defendant turned around?

A Right. He turned around and pulled the thing. I didn't hear the click like Lieutenant Armstead but like I said, Lieutenant Armstead heard the click and so what had happened then you got two entrances to the upstairs lounging area and when he went right there at the bar where he was standing you could enter the back portion, the top portion of the club and also back here.

Q And what did the Defendant do then?

A Well, when he turned around and made the motion that's when he went up through the entrance to the top of the club by the bar.

Q And when he pointed the pistol, Calvin, did you see him? You said you didn't hear the snap. Did you see him squeeze the trigger?

A He was closer to the guy then I was.

Could NOT ANSWER BECAUSE HE KNOW it is A LIE.

FORM OR 325 REPORTERS PAPER & MFG CO 800-626-6313

Q Did you see him point it at him?

A Well, he did point the pistol but I didn't see him squeeze it.

Q Did you see him point it at Lieutenant Armstead?

A He was closer than I was and he did point it at Lieutenant Armstead.

Q And at that time could you -- when he pointed the pistol at y'all, why didn't y'all return fire or something at that time?

A When he turned around, Lieutenant Armstead said "I heard a click." There were about four or five girls and ran out from the area where he was and they were like five girls running and screaming, trying to get outside the club and there was no way possible we was going to fire at this time.

But he heard a click : Screaming Girls!!

Q So there were four or five girls in between y'all and the Defendant?

A That's right.

Q Now, I show you what's been marked as State's Exhibit 1 and ask you if you can identify that, please?

A That's the weapon I took off of him.

Q And when did you take it off of him?

A Well, the guy turned and went upstairs and I think Lieutenant Armstead inquired can we get up to the top of the club without going to that direction and I said

Q Was the music still on inside?
A I don't -- I think they had stopped the music.
Q Okay. Still the same kind of noise going on as far as the crowd going through?
A At that time there were people still in the club and still hollering that he has a gun.
Q A lot of shouting going on?
A Yeah. Somebody said "There he is." And the guy turned around and as this guy was running about five or six girls come storming out of there right across, between the Defendant and the two officers.
Q Okay. And you say you didn't see Tommy point the gun at Lieutenant Armstead?
A Yes, that's correct.
Q What was the Defendant's next action after that time?
A He disappeared. He went up the stairs there and he was going, he was upstairs because there was access upstairs from the back of the bar.
Q Let me get this straight. There are two stairways up?
A To the upstairs lounge. There's a bar upstairs I'm talking about.
Q And you went immediately upstairs, is that correct?
A That's correct.
Q And the two of you took the other stairway up?

A That's correct.

Q All right. Lieutenant Armstead in the lead?

A More or less, that's correct, yes.

Q Okay. When the two of y'all got upstairs, how many other people were . . .

A No one up there but him.

Q None but him. And how did you find him again?

A He was sitting on a leather, black sofa. There's a sofa in the corner.

Q Right.

A And you go up the stairs there and as you go up you can see the lounge area back there.

Q Right. Okay. And at that point you and Lieutenant Armstead placed him under arrest?

A Well, we had to, we turned around and the guy was sitting there and we said "Get up with your hands in the air." And he said "Hey, man, what y'all talking about. I ain't done nothing."

Q But you did place him under arrest, though, is that correct?

A Correct. We had to get over there to apprehend him.

Q And where was the pistol found?

A It was found in his back, back there, when I threw him on the floor and he kept hollering "Man, what you doing? What you doing?" So I said "Here's the

gun." And we removed the gun from his person.

Q You said that you did give the Defendant his Miranda rights?

A That's correct. He was read his rights as he was being handcuffed.

Q Did you have any other occasion to talk to him that evening?

A That was it for me.

Q About how long were you in the immediate vicinity of the Defendant after you arrested him up there?

A He was handcuffed, taken downtown, put in a car and that was it.

Q Okay. You did ask the Defendant if he understood his Miranda rights, didn't you?

A Well, I don't think I asked him did he understand them. He was under arrest at that time and had the revolver on his person and he was reread his rights once he got to headquarters.

Q All right. Did you observe the odor of alcoholic beverages about the Defendant?

A There's alcohol in the club. That whole area, alcohol, people wasting drinks, pouring them over, it was impossible to say at that time. Everything was moving so quick so I can't say because the whole area was.

MR. LOFTIN: Yes, sir.

He testified on voir that he didn't see the defendant point the gun at Armstead.

REDIRECT EXAMINATION

BY MR. LOFTIN:

Q Mr. Ricks, you said he -- did you see the Defendant point the gun at Lieutenant Armstead?

A That's correct.

MR. LOFTIN: No further questions.

COURT: Thank you. You can step down.

Ladies and gentlemen of the jury, because of the time of the hour we're going to stop at this point for the day. I would request that you not discuss this case with anyone during our evening recess or allow anyone to discuss this case with you. As you go home to your families tonight I would request that you not discuss this case with them. I don't mind you telling them that you re working on a case with me but please don't tell them what it's about. Not that they will attempt to influence you but you must make your decision based on what you hear in this courtroom. Conversations you might have with others might inadvertently influence you so I would request that you not discuss this case